**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| RAMONA BROWN, on behalf of herself and others similarly situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | | CA 15-0029-CG-C |
| | : | |
| LAMBERT'S CAFÉ III, INC., | : | |
| | : | |
| Defendant. | | |

## ORDER

This matter is back before the Court on plaintiffs' motion for an award of reasonable attorneys' fees and costs (Doc. 45), the defendant's response in opposition (Doc. 48), and plaintiffs' reply (Doc. 49). The parties' orally consented to the undersigned's authority to award attorneys' fees and costs in this matter, in accordance with 28 U.S.C. § 636(c), and, therefore, any objection to this order should be taken directly to the Eleventh Circuit Court of Appeals, *see* 28 U.S.C. § 636(c)(3) ("Upon entry of judgment in any case referred under paragraph (1) of this subsection, an aggrieved party may appeal directly to the appropriate United States court of appeals from the judgment of the magistrate judge in the same manner as an appeal from any other judgment of a district court."). Following a review of the foregoing pleadings, with attachments, as well as all other relevant pleadings in this matter, the Court **GRANTS IN PART** and **DENIES IN PART** plaintiffs' motion for an award of reasonable attorneys' fees and costs (*see* Doc. 45), as more fully explained hereinafter.

## BACKGROUND

Plaintiff Ramona Brown filed a collective action complaint in this Court on January 22, 2015, on behalf of herself and similarly situated individuals, to recover

unpaid wages and overtime under the Fair Labor Standards Act ("FLSA"). (Doc. 1.) Brown, a server, specifically alleged that defendant Lambert's Café III, Inc. "had a uniform policy and practice of requiring employees to work off the clock and of claiming the tip credit for non-tipped work." (*Id.* at ¶ 4.) Brown was allowed to amend her collective action complaint in early May of 2015 (Doc. 24); that amendment added as named plaintiffs Leslie Morrison, Steve Morris, Sara Boykin, and Donna Ranna, and added allegations regarding "passers and bussers." (*See id.*) The parties ultimately settled their differences in September 2015 but were unable to reach agreement on an appropriate award of fees and costs as contemplated by 29 U.S.C. § 216(b). Accordingly, the decision regarding an appropriate award of fees and costs is before the undersigned for determination following briefing by the parties.

## DISCUSSION

29 U.S.C. § 216(b) provides that in an FLSA action seeking unpaid wages and overtime the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant[.]" *Id.* Section 216(b) has been interpreted to mean that "fee awards [are] mandatory for prevailing plaintiffs." *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985) (citation omitted); *see also Shelton v. Ervin*, 830 F.2d 182, 184 (11th Cir. 1987) ("Section 216 provides for an award of attorney's fees, as opposed to granting the court discretion in awarding such fees, to the prevailing plaintiff in FLSA cases."). Here, Lambert's Café concedes that plaintiffs are prevailing parties under the FLSA and, therefore, are entitled to an award of attorney's fees. (*See* Doc. 48, at 1.)

Over thirty years ago, the Supreme Court indicated that "'the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Watford*

2

*v. Heckler*, 765 F.2d 1562, 1568 (11th Cir. 1985) (EAJA), quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (§ 1988) (other citations omitted). The Eleventh Circuit has repeatedly applied *Hensley* in FLSA cases, *Martinez v. Hernando County Sheriff's Office,* 579 Fed.Appx. 710, 713 (11th Cir. Aug. 21, 2014); *Padurjan v. Aventura Limousine & Transp. Serv., Inc.,* 441 Fed.Appx. 684, 685-686 (11th Cir. Sept. 28, 2011); *Galdames v. N&D Inv. Corp.,* 432 Fed.Appx. 801, 806 (11th Cir. Jun. 23, 2011), *cert. denied, ___* U.S. *___,* 132 S.Ct. 1558, 182 L.Ed.2d 167 (2012); *Perez v. Carey Int'l, Inc.,* 373 Fed.Appx. 907, 910-9110 (11th Cir. Apr. 9, 2010), *cert. denied,* 562 U.S. 964, 131 S.Ct. 480, 178 L.Ed.2d 291 (2010), and, as just indicated by quoted language from *Hensley,* "[t]he first step in calculating a reasonable attorney's fee award is to determine the 'lodestar'—the product of multiplying reasonable hours expended times a reasonable hourly rate." *Martinez, supra,* 579 Fed.Appx. at 713, citing *American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999); *see also Bivins v. Wrap It Up, Inc.,* 548 F.3d 1348, 1350 (11th Cir. 2008) ("The product of these two figures is the lodestar and there is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve."). "In determining what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable,' the court is to consider the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974)." *Id.* "The *Johnson* factors include: (1) the time and labor required; (2) the difficulty of the issues; (3) the skill required; (4) the preclusion of other employment by the attorney because he accepted the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Faught v.*

*American Home Shield Corp.,* 668 F.3d 1233, 1242-1243 (11th Cir. 2011) (citations omitted). And, after determination of the lodestar, that "number" may then be "adjusted after considering other factors, such as the results obtained." *Martinez, supra,* 579 Fed.Appx. at 713, citing *Barnes, supra,* and *Hensley, supra,* 461 U.S. at 434, 103 S.Ct. at 1940.

In determining the proper lodestar in this case, the undersigned first considers what hourly rates are reasonable and then what hours were reasonably expended in pursuing this matter. In so doing, the Court keeps in mind that "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley, supra,* 461 U.S. at 437, 103 S.Ct. at 1941.

A. **Reasonable Hourly Rates.** In their motion and accompanying attachments, plaintiffs request an hourly rate of $325.00 for Henry H. Brewster, Jr., Esquire, $280.00 for Abby M. Richardson, Esquire, and $280.00 for Daniel E. Arciniegas, Esquire. (*See, e.g.,* Doc. 45, at 6.) The defendant does not take issue with the request made on behalf of Mr. Brewster, although counsel for Lambert's Café mistakenly identifies the requested rate as $310 an hour (*see* Doc. 48, at 3 ("Defendant does not contest the reasonable rate for Mr. Brewster being $310 per hour[.]")), but does propose an hourly rate of "at most" $235 for both Mr. Arciniegas and Ms. Richardson (*id.* at 4 ("Counsel for Defendant submits the *maximum* hourly rate either Mr. Arciniegas or Ms. Richardson should receive is $235[.]")).

> "The Eleventh Circuit has instructed that a reasonable hourly rate is 'the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation.'" *McDonald,* 2013 WL 1389976, *3 (citing *Norman,* 836 F.2d at 1303). "The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.'" *American Civil Liberties Union of Georgia v. Barnes,* 168 F.3d 423, 437 (11th Cir. 1999) (citing *Cullens v. Georgia Dep't of Transp.,* 29 F.3d 1489, 1494 (11th Cir. 1994)[)]. However, "[i]f the fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in

4

that place who are willing to handle his claims." *Barnes,* 168 F.3d at 437. The fee applicant "bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Norman,* 836 F.2d at 1299.[1] "Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work." *Norman,* 836 F.2d at 1299.

*Cormier v. ACAC Inc.,* 2013 WL 6499703, *2 (S.D. Ala. Dec. 11, 2013) (footnote added).

With these general principles in mind, the undersigned considers first the hourly rate ($325) requested by Mr. Brewster before shifting the majority of ink to the hourly rates requested by Mr. Arciniegas ($280) and Ms. Richardson ($280). As aforesaid, the defendant does not lodge an explicit objection to the hourly rate requested by Mr. Brewster but does mistakenly identify that request as $310 per hour (Doc. 48, at 3), rather than the true request of $325 per hour. Because the defendant did not request that the Court allow it to file a sur-reply to address this obvious mistake, the undersigned finds that defendant would have no objection to Mr. Brewster's true requested hourly rate of $325. Moreover, Mr. Brewster's affidavit evidence regarding the rates he has commanded in FLSA cases (Doc. 45, Exhibit 2, Declaration of Henry H. Brewster, Jr., at 5-6), *see Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292, 1299 (11th Cir. 1988) (recognizing that satisfactory evidence that a requested hourly rate is in line with prevailing market rates necessarily must speak to rates actually billed and paid in similar lawsuits and that useful opinion evidence consists of evidence of rates historically commanded), combined with his 34 years of practice (*id.* at 1-2), underscore the reasonableness of his requested rate of $325. Accordingly, the undersigned concludes that an appropriate and reasonable hourly rate for Mr. Brewster is $325.

---

[1] *Compare Hensley, supra,* 461 U.S. at 437, 103 S.Ct. at 1941 *with Galdames, supra,* 432 Fed.Appx. at 807 ("The party applying for fees bears the burden of establishing the reasonableness of the proffered rate.").

Turning to the hourly rate requested by both Mr. Arciniegas ($280) and Ms. Richardson ($280),  the undersigned notes that Mr. Arciniegas attempts to validate his request by reference to seven of *Johnson's* twelve factors and accompanying attachments (*see* Doc. 45, Exhibit 1, Declaration of Daniel E. Arciniegas, at 8-14 & Exhibits B-D to the Arciniegas declar.), while Ms. Richardson attempts to validate her request by pointing to her award of fees by Chief Judge Steele in an order entered on July 16, 2014, in *Luker v. Wilcox Hospital Board,* 14-0043-WS-B, Doc. 30, at the requested hourly rate of $220 (*see* Doc. 45, Exhibit 3, Declaration of Abby M. Richardson, at 7), and the attached declarations of Henry Brewster and Temple D. Trueblood (*see id.,* Exhibits 3b & 3c). However, the affidavit and declarations supplied by Mr. Arciniegas and Ms. Richardson are simply unhelpful in establishing a reasonable hourly rate in the relevant market of Mobile, Alabama, *see Smith v. Werner Enterprises, Inc.,* 2015 WL 7185503, *3 (S.D. Ala. Nov. 13, 2015) ("'[T]he general rule is that the relevant market for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed.' 'The relevant market is thus Mobile . . . .'" (citations omitted)), as neither Allen D. Arnold nor Temple Trueblood specify that their "rate" information is from Mobile.[2] Moreover, Mr. Brewster's declaration offers no help in establishing a reasonable rate for Ms. Richardson because it simply offers the declarant's opinion devoid of "'[e]vidence of rates' historically commanded." *Smith, supra,* at *3.[3]

---

[2]     Neither of these attorneys cites to any specific cases from Mobile where attorneys of the comparable experience of Mr. Arciniegas and Ms. Richardson were awarded fees at a rate anywhere near the rate requested in this case.

[3]     In addition, the undersigned is hesitant to rely on Mr. Brewster's opinion that Ms. Richardson should command a rate of $280.00 since he is co-counsel in the instant matter and reliance on his opinion arguably would be in "tension" with the admonition in *Norman* that "[s]atisfactory evidence [that the requested rate is in line with prevailing market rates] at a (Continued)

However, the undersigned is not left in a "vacuum" regarding a reasonable hourly rate in the relevant market of Mobile for Ms. Richardson, in particular, and, as well, for Mr. Arciniegas, given that both of these attorneys have been practicing law for roughly the same period of time (*compare* Doc. 45, Exhibit 1, Arciniegas aff., at 2 (Arciniegas has been actively engaged in the practice of law since 2007) *with* Doc. 45, Exhibit 3, at 2 (Richardson has been actively engaged in the practice of law since 2006)), because Ms. Richardson was awarded attorney's fees by Chief Judge Steele in an FLSA case in July of 2014 based on her requested hourly rate of $220. *See Luker, supra,* Doc. 30, at 9 ("Plaintiff's counsel is requesting an hourly rate of $220 for her services, and has made a substantial showing that such a rate is reasonable in the Mobile, Alabama market for a lawyer of her experience and qualifications."). And while the award to Ms. Richardson assists the undersigned in reaching a reasonable rate for Mr. Arciniegas and Ms. Richardson in this case, it does not dictate the rate. Indeed, this Court's consideration of the seven *Johnson* factors cited by Mr. Arciniegas (that is, customary fees, fixed or contingent fees, novelty and difficulty of the question, undesirability of the case, skill required to perform the legal services properly, nature and length of the professional relationship with the client, and awards in similar cases), along with recognition of the aforementioned "bump up" in Mr. Brewster's hourly rate,[4] convinces the undersigned that a reasonable hourly rate in the Mobile market for attorneys with

---

minimum is more than the affidavit of the attorney performing the work." *Norman,* 836 F.2d at 1299.

[4]    On April 11, 2014, some twenty-one (21) months ago, Mr. Brewster was awarded attorney's fees in *Goss v. Southern Construction Group, LLC,* 13-0566-WS-B, based on a requested hourly rate of $310.00, *see id.* at Docs. 25-27, and now, in this case, is being granted a $15.00 increase in his rate.

the relative experience and qualifications of Mr. Arciniegas and Ms. Richardson is $235.00. *See Cormier, supra,* at *3 ("[T]he court finds that the requested billing rates of $400/hour for attorney Calamusa (20 years experience), $325/hour for attorneys Jent (15 years experience), Slate (15 years experience), Evans (15 years experience) and Tunstall (21 years experience) to be unreasonable and instead finds a rate of $250/hour to be reasonable for each."). The foregoing rate is inherently reasonable for an attorney litigating an FLSA case in Mobile with less than 10 years of practice under his/her belt and acting as second or third chair (as would certainly be the positions of Mr. Arciniegas and Ms. Richardson), inasmuch as it represents an increase of $15.00 an hour over that Ms. Richardson was awarded some eighteen months ago in *Luker, supra,* where she alone represented the prevailing party. Thus, the Court concludes that an appropriate hourly rate for Mr. Arciniegas and Ms. Richardson is $235.

**B.** **Hours Reasonably Expended.** The plaintiffs initially sought payment for 87.60 hours of Mr. Arciniegas' time, 60.70 hours of Mr. Brewster's time, and 55.55 hours of Ms. Richardson's time. (Doc. 45, at 6.) Following receipt of the defendant's response in opposition (*see* Doc. 48), two of plaintiffs' attorneys, Mr. Brewster and Ms. Richardson, did "shave" some administrative/clerical time from their original requests (*see* Doc. 49, Exhibits 2-3A; *compare id. with* Doc. 45, Exhibits ), but only Mr. Brewster's total went down because Ms. Richardson now includes within her request the time she spent on the reply memorandum (a total of 12.6 additional hours). Thus, after all is said and done, plaintiffs seek payment for 87.60 hours of Mr. Arciniegas' time (Doc. 45, at 6), 56.80 hours of Mr. Brewster's time (Doc. 49, Exhibit 3, Supplemental Declaration of Henry H. Brewster, Jr., at 2), and 64.75 hours of Ms. Richardson's time (Doc. 49, Exhibit 2, at 8). Based upon a number of grounds (both specific and one of a more general over-arching nature), Lambert's Café seeks a substantial reduction in these numbers.

"'Fee applicants must exercise what the Supreme Court has termed "billing judgment,"' which requires the exclusion of '"excessive, redundant, or otherwise unnecessary"' hours." *Smith, supra,* at *4, quoting *Barnes, supra,* 168 F.3d at 428, in turn quoting *Hensley, supra,* 461 U.S. at 434, 103 S.Ct. at 1939-1940. Indeed, "[i]f fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are 'excessive, redundant, or otherwise unnecessary.'" *Barnes, supra,* 168 F.3d at 428; *see also id.* ("Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded."); *see Norman, supra,* 836 F.2d at 1301 ("Excluding excessive or otherwise unnecessary hours under the rubric of 'billing judgment' means that a lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights, recognizing that in the private sector the economically rational person engages in some cost benefit analysis."). "Moreover, because an assessment of the reasonableness of the hours requested (at least when objection is adequately raised by the defendant) 'contemplate[s] a task-by-task examination of the hours billed,' plaintiffs' counsel is required to record each task, and the time associated with each, with sufficient clarity that the Court can evaluate the reasonableness of the expenditure of time." *Smith, supra,* at *4 (citations omitted).

Instead of separately considering the defendant's "broader" billing judgment argument and then addressing its more "pinpointed" objections, the undersigned addresses all of defendant's objections here under the broad umbrella of billing judgment. This approach is taken inasmuch as consideration of the objections interposed by the defendant, along with the Court's own review of the time

records/itemizations submitted by plaintiffs' counsel, leads the undersigned to conclude that it is advisable in this case to apply across-the-board reductions to the number of hours claimed by plaintiffs' counsel rather than perform a strict hour-by-hour analysis. *See Bivins, supra,* 548 F.3d at 1350 ("When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis *or* it may reduce the requested hours with an across-the-board cut." (emphasis supplied)). While it appears to the undersigned that the defendant is urging upon this Court a "hybrid" approach (*see* Doc. 48, at 16 ("Some of the time entries that Plaintiffs failed to eliminate are subject to broader exclusions and are more easily computed. For example, the inclusion of duplicative time spent by counsel exchanging emails with each other amounts to a calculable reduction of at least $28,000. Other adjustments, such as those intended to isolate vague and duplicative entries, are more tedious to calculate and therefore should be subject to additional across the board reduction. This is particularly true where, as here, counsel have engaged in habitual and pervasive block billing, making it difficult to discern what amount of time was actually devoted to a specific task on a given day.")),   the undersigned specifically declines such invitation in order to ensure that the Court does not run afoul of *Bivins, supra,* 548 F.3d at 1351 ("Our circuit's precedent states that the district court is to apply either method [that is, an hour-by-hour analysis or an across-the-board cut], not both.").

The defendant initially contends that despite the assertion by plaintiffs' counsel that they exercised "billing judgment," the assertion "masks" the failure to account for the full extent of unnecessary duplication of work (which will be discussed in more detail below) and that fees are sought for facially non-compensable items. (*See* Doc. 48, at 4-6.) The defendant then cites, as examples only, the following: (1) work associated

10

with one plaintiff's bankruptcy case (Richardson entries on 10/28/14, 11/3/14, 3/24/15, and 3/25/15 and Brewster entries on 10/29/14, 9/9/15, 9/16/15, 9/24/15, and 9/30/15); (2) conversations and correspondence with or about unnamed potential "clients" (Brewster entries on 9/11/14, 11/3/14, 11/4/14, 11/13/14 and 4/15/15); (3) communications with attorneys not actively involved in the litigation (Brewster entry on 8/23/14 and Richardson entry on 9/11/14); (4) communications with or about unidentified individuals who are unidentifiable by defendant as having any relationship to the case (Richardson entries on 5/11/15 and 10/13/15, Arciniegas entry on 9/16/15, and Brewster entries on 5/18/15 and 10/7/15); (5) emailing a wrong person (Richardson entry on 11/13/14); (6) time spent on tasks pertaining to conditional certification (which was not sought) and regarding opt-in plaintiffs (of which there were none) (Arciniegas entry on 3/17/15 and Brewster entries on 3/16/15 and 3/18/15); and (7) the failure of Arciniegas and Richardson to follow Brewster's example and deduct time for certain administrative tasks, such as discussing the fee-splitting arrangement amongst themselves and preparing retainer agreements (Arciniegas entry on 8/18/14 and Richardson entries on 9/15/14, 9/17/14, and 9/29/14). (Doc. 48, at 4-6.) And, indeed, the plaintiffs' reply to the defendant's response in opposition effectively concedes many of the defendant's arguments in this regard inasmuch as two of plaintiffs' attorneys looked again at their time records and eliminated some of the entries to which defendant interposed objection. For instance, Ms. Richardson eliminated all entries related to work performed on one of the plaintiff's bankruptcy case (*compare* Doc. 49, Exhibit 2 (entries on 10/28/14, 11/3/14, 3/24/15, and 3/25/15) *with* Doc. 45, Time Records Attached to Richardson declar. (entries on 10/28/14, 11/3/14, 3/24/15, and 3/25/15)), those entries associated with discussing the fee-splitting arrangement and preparing retainer agreements (*compare* Doc. 49,

Exhibit 2 (entries on 9/15/14, 9/17/14, and 9/29/14) with Doc. 45, Richardson Time Records (entries on 9/15/14, 9/17/14, and 9/29/14)), and her communications with a lawyer not involved in the case (*compare* Doc. 49, Exhibit 2 (entry on 9/11/14) *with* Doc. 45, Richardson Time Records (entry on 9/11/14)), while Mr. Brewster appears to have eliminated time he spent related to conditional certification (*compare* Doc. 49, Exhibit 3A (entries on 3/16/15 and 3/18/15) *with* Doc. 45, Exhibit 2A (entries on 3/16/15 and 3/18/15)). However, plaintiffs' counsel did not do enough because Ms. Richardson failed, for instance, to eliminate the time entry for emailing the wrong person,[5] Mr. Brewster failed to eliminate an entry for bankruptcy work that has no relationship to bankruptcy approval of the settlement (*see* Doc. 49, Exhibit 3A (entry on 10/29/14)), and, more importantly, Mr. Arciniegas made absolutely no changes in his fee request, not even the entry related to a fee-splitting arrangement (*see* Doc. 45, (entry on 8/18/14)) about which plaintiffs have no response (*see* Doc. 49, at 4-6).[6] Accordingly, these failures will be remedied by the across-the-board reductions set forth *infra*.

Lambert's Café next complains that there are numerous vague entries throughout the fee records supplied by plaintiffs' counsel. There can be little question but that "[t]he key requirement for an award of attorney fees is that '[t]he documentation offered in support of the hours charged must be of sufficient detail and

---

[5]     The undersigned fails to appreciate why defendant should pay for the mistake of plaintiffs' counsel in this regard and plaintiffs have not cited to any case law establishing that such time is compensable.

[6]     The Court does agree with plaintiffs that some of the defendant's arguments are not well taken. For instance, the fact that Jon Goldfarb was copied with a fact memo prepared by Mr. Brewster is of no moment because Mr. Arciniegas was also copied with the memo (*see* Doc. 49, Exhibit 3A (entries on 8/23/14 & 8/27/14)) and it was necessary for Mr. Brewster to spend some time on Mr. Morris' bankruptcy case since the bankruptcy court necessarily had to approve the settlement in this case before it could be finalized (*see* Doc. 49, Exhibit 3A (entries on 9/9/15, 9/16/15, 9/24/15 & 9/30/15)).

probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation.'" *Imwalle v. Reliance Medical Products,* 515 F.3d 531, 553 (6th Cir. 2008), quoting *United Slate, Local 307 v. G&M Roofing & Sheet Metal Co.,* 732 F.2d 495, 502 n.2 (6th Cir. 1984); *see also Barnes, supra,* 168 F.3d at 427 ("'[T]he general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity.'"). As a consequence, "exceptionally terse descriptions of activities do not satisfy the applicant's burden" of maintaining adequate billing records, *Wright v. Blythe-Nelson,* 2004 WL 287002, *5 (N.D. Tex. Dec. 13, 2004) (citation omitted), and vague entries may well be found not reimbursable, *see, e.g., id.* ("'Prepare for Trial'" entries were impermissibly vague and were disallowed); *see Bujanowski v. Kocontes,* 2009 WL 1564263, *2 (M.D. Fla. Feb. 2, 2009) ("[A] time entry may be [] discounted where the description of the work performed is overly vague."), *report and recommendation adopted in part,* 2009 WL 1564244 (M.D. Fla. May 1, 2009). The defendant cites, again as purely examples, entries by Mr. Arciniegas for "emails with co-counsel regarding," "email to co-counsel," "review file call client" (Doc. 245, Exhibit A to Arciniegas declar. (entries on 8/13/15, 2/24/15 & 3/18/15)) and entries by Mr. Brewster for "email to Daniel and Abby re: tasks," "telephone Morris," and "conference re: Ct. regal meet" (*see, e.g.,* Doc. 49, Exhibit 3A (entries on 3/18/15, 4/8/15 & 6/11/15)). (Doc. 48, at 7.) And while plaintiffs chastise defendant for focusing on individual parts of entries (*see* Doc. 49, at 7 & Exhibit 3A (Brewster entries on 3/18/15 & 4/8/15)), this really "begs the question" inasmuch as Mr. Brewster appears to have now "wholly" withdrawn his request for reimbursement for emailing "Daniel and Abby re: tasks" on April 8, 2015 (*compare* Doc. 49, Exhibit 3A (4/8/15 entry)) and his March 18, 2015 entry remains attackable as an example of impermissible block billing. It should

suffice to say that a number of entries in this case are, in fact, too vague for the Court to determine the reasonableness of the time expended,[7] and that, for instance, Mr. Arciniegas could have provided a more detailed description of why he needed to review the file and (in general) what he discussed with his client for 1.5 hours on March 18, 2015 without divulging any privileged matter (*see* Doc. 49, at 7, n.2). Again, these vague entries supply yet another reason for making across-the-board cuts in this case.

Next, the defendant correctly points out that any time spent by plaintiffs' counsel on clerical tasks should be excluded from the "hours" figure of the lodestar calculation (*see* Doc. 48, at 7-9). *Smith, supra,* at *6 ("A lawyer may not bill for performing clerical tasks."); *cf. Missouri v. Jenkins ex rel. Agyei,* 491 U.S. 274, 288 n.10, 109 S.Ct. 2463, 2472 n.10 (1989) ("[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."). In a partial concession of this attack, Ms. Richardson reviewed her time records and eliminated the entry on February 2, 2015, for reviewing the answer due deadline and calendaring same. (*See* Doc. 49, Exhibit 2 (2/2/15 entry); *compare id. with* Doc. 45, Time Records Attached to Richardson declar. (2/2/15 entry).) Again, however, the movants did not go far enough inasmuch as it is clear that Ms. Richardson should have eliminated the time she spent on July 28, 2015

---

[7]     The following entries by Mr. Arciniegas are vague: January 9, 2015 ("email to co counsel"); February 24, 2015 ("email to co-counsel"); March 18, 2015 ("review file call client"); March 19, 2015 ("email to henry[;] call to client"); March 25, 2015 ("email to counsel"); April 13, 2015 ("email to co-counsel[;] review file"); July 15, 2015 ("email to opposing counsel and call"); and August 13, 2015 ("emails with co-counsel regarding"). In addition, as examples, the following entries by Mr. Brewster are vague: April 21, 2015 ("Review documents to Dropbox"); June 10, 2015 ("Telephone Morrison"); June 11, 2015 ("Telephone Morris"); and July 17, 2015 ("Emails to and from Daniel). These entries left the undersigned with one of two questions: why or who. In other words, "why" did Mr. Arciniegas or Mr. Brewster email co-counsel, call their various clients, or review the file and to "whom" did Mr. Arciniegas place a call on July 15, 2015? These are matters that should have been supplied in the time records and the failure to insert such information makes such entries impermissibly vague.

calendaring the dates set forth in the undersigned's mediation order (*see* Doc. 49, Exhibit 2 (7/28/15 entry)),[8] and Mr. Brewster should have eliminated the time he spent on "File" on April 27, 2015 (Doc. 49, Exhibit 3A (4/27/15 entry)). As for the time putatively spent by Mr. Arciniegas writing a letter to the undersigned on August 17, 2015 (4.5 hour), the plaintiffs have now explained that this time was expended on August 2, 2015 (Doc. 49, at 8). Clearly, however, the time was not spent writing a letter to the undersigned; instead, it was spent writing the demand letter (to defense counsel) referenced in the settlement conference order entered on July 27, 2015. (*Compare id. with* Doc. 37, at 1-2.) Interestingly, that settlement conference order clearly instructed plaintiffs' counsel to forward both settlement letters to chambers not later than 5:00 p.m. on August 17, 2015 (*id.* at 2), if settlement was not accomplished (which did not happen) and, therefore, it is clear that Mr. Arciniegas meant to charge for a task he performed on August 17, 2015, which this Court is left to assume was the non-compensable clerical task of forwarding both demand letters to chambers. And while the just-cited entries by plaintiffs' counsel do not amount to a significant amount of time, it is really the "cumulative" impact of all the defendant's objections (and examples of those objections) that warrant the across-the-board reductions set forth below.

By far the most significant objections lodged by the defendant relate to alleged "duplication" of efforts. (*See* Doc. 48, at 9-15.)[9] The Eleventh Circuit long ago staked the

---

[8]      In addition, Ms. Richardson should not have billed for the clerical task of filing her notice of appearance. (*See* Doc. 49, Exhibit 2 (1/27/15 entry).)

[9]      Almost parenthetically, the defendant also contends that plaintiffs' counsel engaged in block billing. (*See* Doc. 48, at 16.) "'Block billing' occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task." *Ceres Environmental Services, Inc. v. Colonel McCrary Trucking, LLC,* 476 Fed.Appx. 198, 203 (11th Cir. Apr. 25, 2012). Block billing is objectionable because it "makes it difficult, if not impossible, to calculate with any precision the number of hours an attorney devoted to a (Continued)

position that "[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Norman,* 836 F.2d at 1302. However, it s also just as clear that "'[t]he time billed for excessive lawyers in a courtroom or conference when fewer would do, "may obviously be discounted."'" *Barnes,* 168 F.3d at 433, quoting *Johnson, supra,* 488 F.2d at 717.

In this case, the defendant attacks the plaintiffs' failure to make any deductions for the excessive time their attorneys spent emailing each other, activities in which only two of the three attorneys participated, and time for tasks to which multiple attorneys devoted time. (Doc. 48, at 10.) In addition, the defendant takes issue with both Mr. Brewster and Ms. Richardson attending the settlement conference, arguing that one too many showed and "prepared" for the conference.

---

particular task[,]" *Barnes,* 168 F.3d at 429, thereby "making it difficult . . . to  gauge reasonableness[.]" *Ceres,* 476 Fed.Appx. at 203.

A review of the time records submitted by plaintiffs' counsel does reveal some block billing by all attorneys. For instance, and as examples only, the following entries are reflective of block billing: (1) Mr. Arciniegas' entries for August 11, 2014, March 17, 2015, May 3-5, 2015, August 26, 2015, September 10, 2015, September 15, 2015, and September 16, 2015 (*see* Doc. 45, Exhibit A to Arciniegas declar.); (2) Ms. Richardson's entries for September 16, 2014, October 7, 2014, October 8, 2014, October 14, 2014, November 12, 2014, January 12-13, 2015, January 21, 2015, April 1, 2015, April 28, 2015, May 12, 2015, May 26, 2015, June 10, 2015, June 24, 2015, July 7, 2015, August 25, 2015, and September 23, 2015 (*see* Doc. 49, Exhibit 2); and (3) Mr. Brewster's entries for August 27, 2014, September 12, 2014, October 8, 2014, January 31, 2015, March 18, 2015, May 4, 2015, May 6, 2015, May 12, 2015, May 18, 2015, August 10, 2015, September 24, 2015, October 7, 2105, October 12, 2015, and October 13, 2015 (*see id.,* Exhibit 3A).

The undersigned is of the opinion that the across-the-board reductions in the hours submitted by plaintiffs' counsel, as set forth *infra,* will offset the effects of block billing, as well as the other problems associated with the time itemizations submitted by plaintiffs' counsel. *See Ceres, supra,* 476 Fed.Appx. at 203 ("Courts have . . . approved across-the-board reductions in block-billed hours to offset the effects of block billing.").

According to plaintiffs, counsel divided labor so that Mr. Brewster and Ms. Richardson developed the facts (including interviewing potential clients and witnesses), Ms. Richardson was primary regarding all pleadings and research supporting same, Mr. Arciniegas analyzed time data, developed formulas, and performed calculations underlying the settlement, and Mr. Brewster "provided knowledge of local systems procedures, bankruptcy court matters, and the negotiations, including the mediation." (Doc. 45, Exhibit 1, Plaintiffs' Memorandum, at 8.) However, when the undersigned looks at each time itemization submitted in this case, it becomes instantly clear, for instance, that all three attorneys spent time drafting (or working on) the complaint, the various briefs filed on the issue of attorney's fees, researching legal issues, and the like, which irrevocably blurs the markers representing each attorney's distinct contribution. Since Ms. Richardson was assigned the task of drafting the pleadings, the undersigned fails to understand why it would be necessary for Mr. Arciniegas to email her about the complaint (including, providing a basic complaint) (*see* Doc. 45, Exhibit A to Arciniegas declar. (entries for 9/11/14, 9/16/14, and 9/26/14)) or for Mr. Brewster to spend on the complaint all the time reflected on his itemization (*see* Doc. 49, Exhibit A3 (entries for 11/6/14, 12/8/14, 12/23/14, 1/12/15, and 1/13/15)). Additionally, the undersigned does not understand why it was necessary for Mr. Arciniegas to become so intimately involved in working on the fee petition—including adding case law and finalizing the motion for fees (*see* Doc. 45, Exhibit A to Arciniegas declar. (entries for 9/17/15, 10/1/15, 10/8/15, 10/14/15, and 10/15/15))—or for Mr. Brewster to research hourly rate law (*see* Doc. 49, Exhibit 3A (entry for 10/13/15)). Moreover, because Mr. Brewster was assigned the task of mediating the case, the undersigned is not convinced that it was necessary for Ms. Richardson to prepare for and attend the mediation, from either a factual or legal perspective (*see* Doc. 49, at 11 ("Mr. Arciniegas and Ms. Richardson were

essential to providing the legal and factual support for Plaintiffs' position.")), inasmuch as one of Mr. Brewster's other tasks was to assist in developing the facts and his detailed preparation was sufficient for him to have a "grip" on the case from a factual perspective, and any need for aid in legal support could have been handled from the confines of Ms. Richardson's office (similar to the aid offered by Mr. Arciniegas). And, finally, because Mr. Arciniegas was responsible for drafting the joint motion to approve settlement and spent much time on that endeavor, the undersigned finds that it was not necessary for Ms. Richardson to edit the motion. (*See* Doc. 49, Exhibit 2 (entries for 8/27/15 and 8/28/15).)   Such duplication in effort can, again, be accounted for in across-the-board reductions, as even the defendant suggests. (*See* Doc. 48, at 16 ("Other adjustments, such as those intended to isolate vague and duplicative entries, are more tedious to calculate and therefore should be subject to an additional across the board reduction.").)[10]

---

[10]   These across-the-board reductions are also sufficient to properly reduce for certain tasks that were over-billed or tasks for which this Court cannot understand the need to bill. For instance, it is the undersigned's considered determination that Mr. Arciniegas was overly ambitious with respect to the time he billed reviewing time records on three consecutive days in early May of 2015 (some 31.50 hours) and drafting and finalizing the joint motion to approve settlement (over 27 hours). (*See* Doc. 45, Exhibit A to Arciniegas declar. (entries for 5/3/15, 5/4/15, 5/5/15, 8/25/15, 8/26/15, 8/27/15, 8/28/15, 8/31/15, 9/8/15, 9/9/15, 9/10/15, 9/11/15, 9/14/15, 9/15/15, and 9/16/15).) Indeed, it appears to this Court that on the three consecutive days in May of 2015, it would have been necessary for Mr. Arciniegas to work well in excess of 13 or 14 hour days to bill 10.5 hours on each day. Moreover, the undersigned cannot understand why it was necessary for Ms. Richardson to bill for her review of the filed complaint on January 26, 2015, why it took her 12 minutes to file her notice of appearance on January 27, 2015 (or, as aforesaid, why she would bill for such clerical task), why it took her 12 minutes on February 20, 2015 to review the answer, or why she would bill any amount of time related to the reply brief task of further reduction of time entries. (*See* Doc. 49, Exhibit 2 (entries for 1/26/15, 1/27/15, 2/20/15 & 11/6/15).) And, finally, the undersigned does not understand why it took Mr. Brewster 12 minutes on September 12, 2014 to forward "Michele's message re: client contact to Daniel[,]" why he billed 6 minutes on January 31, 2015 for attempting to call a potential client, why he spent 24 minutes on January 31, 2015, reviewing the answer and annotating the complaint, why he billed 1.6 hours on March 21, 2015 conferencing with Sara Boykin and preparing her consent when his description of activities indicate he accomplished these tasks in 1.5 hours, why he spent some 48 minutes on May 6, 2015 performing some (Continued)

What this Court specifically **DECLINES** to do, however, is eliminate all time spent by plaintiffs' counsel exchanging emails, time which defendant suggests runs as high as $28,000. (*See* Doc. 48, at 10-11 & 16.) Initially, it need be noted that at least two of plaintiffs' attorneys have acted to "shave" some of the time spent on email communications and when these actions are combined with across-the-board reductions set forth *infra*, the undersigned is confident that a sufficient number of email hours reflected in the itemizations supplied to the Court will not be compensated. The undersigned simply cannot agree that all email entries must be eliminated in this case, as it is readily apparent that some communication was necessary to ensure coordination of attorney effort in a case involving five plaintiffs and several issues. *See Cormier, supra,* at *4 (refusing to reduce what the defendants estimated as 17 to 40 percent of the fees sought in the case spent on interoffice and intra-office communication between plaintiffs' counsel inasmuch as the fee applicants demonstrated that "in light of the multiple plaintiffs and issues, such communication ensured efficient staffing, coordination of attorney effort, and the like.").

The foregoing lengthy discussion establishes that the hours requested by the fee applicants are not reasonable and, in light of the voluminous billing records, are subject to across-the-board reductions rather that the more tedious "pick and shovel work necessary to make a more precise determination." *Kenny A. ex rel. Winn v. Perdue,* 532 F.3d 1209, 1220 (11th Cir. 2008), *rev'd and remanded on other grounds,* 559 U.S. 542, 130

---

unexplained work on the "Tipped Credit 20% Rule," why it took him 12 minutes on July 26, 2015, to review the one sentence status report and one paragraph extension order (*see* Docs. 35 & 36), or why it took him 12 minutes on August 5, 2015 to forward a potential client to Arciniegas. (*See* Doc. 49, Exhibit 3A (entries for 9/12/14, 1/31/15, 3/21/15, 5/6/15, 7/26/15 & 8/5/15).)

S.Ct. 1062 (2010). However, the percentages of reductions will be different because two of the attorneys acted (on two separate occasions) to cut their own hours. And while it is the Court's opinion that the efforts of Mr. Brewster and Ms. Richardson to reduce their hours did not go far enough, an across-the-board cut in the hours requested—56.80 by Mr. Brewster and 64.75 by Ms. Richardson—of 20% is sufficient to account for all remaining deficiencies and bring their requests into the sphere of reasonableness.[11] However, a "larger" across-the-board cut is warranted with respect to Mr. Arciniegas' itemization as he failed to exercise any billing judgment with respect to patently excessive, duplicative, unnecessary, vague, etc., hours set forth in his time records. *Cf. Galdames, supra,* 432 Fed.Appx. at 807 (panel of the Eleventh Circuit affirmed the district court's across-the-board cut with respect to one attorney and no reduction in the hours expended by two other attorneys, thereby implicating that a district court can properly make different across-the-board reductions with respect to the different attorneys working on the case). Accordingly, the undersigned concludes that a 30% reduction in the hours charged by Mr. Arciniegas—87.60—will bring his request into the realm of reasonableness.[12]

     **C.**    **Lodestar Calculation.**  As previously indicated, plaintiffs seek an award for 87.60 hours of Mr. Arciniegas' time at $280 per hour (a total of $24,528), 56.80 hours of Mr. Brewster's time at $325 per hour (a total of $18,460), and 64.75 hours of Ms. Richardson's time at $280 per hour (a total of $18,130). For the reasons set forth above,

---

[11]    Accordingly, the undersigned concludes that Mr. Brewster reasonably spent 45.44 hours, and Ms. Richardson 51.80 hours, on compensable tasks in this matter.

[12]    A 30% reduction in the hours charged by Mr. Arciniegas (87.60) brings his total compensable time to 61.32 hours.

the Court makes an award based on 61.32 hours of Mr. Arciniegas' time at $235 per hour (a total of $14,410.20), 45.44 hours of Mr. Brewster's time at $325 per hour (a total of $14,768.00), and 51.80 hours of Ms. Richardson's time at $235 per hour (a total of $12,173).[13]

D. **Adjustments to the Lodestar Amount.**   While the Supreme Court has made clear that "[t]he product of reasonable hours times a reasonable rate does not end the inquiry[,]" *Hensley, supra,* 461 U.S. at 434, 103 S.Ct. at 1940, this Court does bear in mind that "there is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve." *Bivins, supra,* 548 F.3d at 1350 (citations omitted). Nevertheless, because the defendant urges a significant downward adjustment of the lodestar based on what it argues is plaintiffs' limited success (*see* Doc. 48, at 16-23), the undersigned certainly need recognize that there are other considerations that may lead to an adjustment of the fee award "upward or downward, including the important factor of the 'results obtained'." *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940.

The undersigned appreciates the defendant's argument to be that despite its request for an early settlement demand from the plaintiffs, the plaintiffs at all times took a cavalier attitude to settling this matter, offering nothing to the defendant until the court-mandated settlement conference on June 25, 2015 (*see* Doc. 23, at 8), when they

---

[13]      A total fee award of $41,351.20, in a case where five plaintiffs have recovered $38,000, is not exorbitant.  *Compare, e.g., Cullens v. Georgia Dep't of Transp.,* 29 F.3d 1489, 1493 (11th Cir. 1994) ("'Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases . . . to depend on obtaining substantial monetary relief.' . . . 'A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts.'") *with Galdames, supra,* 432 Fed.Appx. at 802 & 807 (Eleventh Circuit affirmed attorneys' fee award of more than $100,000 in case in which the plaintiff employees were successful in obtaining a $28,000 award for unpaid overtime and liquidated damages under the FLSA).

demanded $25,000 per plaintiff, plus attorneys' fees, without providing rationale for the calculation, and thereafter, eschewed all defendant's offers of settlement and supplied damage calculations to the undersigned that were difficult to understand. (*See* Doc. 48, at 16-21.)

> [W]hen Defendant did not meet their demands, [Plaintiffs] stated they were "rethinking" settling the case and proceeding with discovery. Plaintiffs made settlement demands far in excess of their damages and then simply leveraged the continuing calculation of attorneys' fees to extract a settlement that was not based on actual damages, but rather was based on the threat of continuing to increase attorneys' fees. Indeed, in order to justify their "success," Plaintiffs tout that they actually obtained more than what they were actually entitled. Defendant hardly contests this, but that only tells half of the story. To obtain that result, Plaintiffs exaggerated their damages from the beginning of the litigation through the mediation itself. Thus, if one were to measure Plaintiffs' success against their original demand, they ultimately agreed to a settlement representing about 30% of that demand. Courts should not reward damage assessments that are unrealistic and the pursuit of damages calculations that lack evidentiary and legal support. This is exactly what happened here. Plaintiffs recovered far less than they sought to recover. Plaintiffs who overreach with an excessive damages demand and later end up with a fraction of their initial demand should run the risk of causing the Court to summarily reject their attorneys' fees motion in its entirety.

(*Id.* at 21-22 (internal citations and footnote omitted).)

The undersigned simply cannot find that the defendant's argument in this regard warrants a downward departure in the lodestar given its admission that plaintiffs actually obtained more in damages than that to which they were entitled. Moreover, it also bears repeating that the defendant knew plaintiffs' opening salvo on June 25, 2015 ($25,000 for each of the five plaintiffs, plus attorneys' fees) was patently unrealistic. Therefore, its suggestion that the undersigned should compare the settlement amount (a total of $38,000 for the five plaintiffs) to the initial unrealistic total demand of $125,000, and then adjust the lodestar accordingly, is rejected. In other words, the defendant's arguments do not persuade the undersigned that the $38,000 settlement

(admittedly more than the plaintiffs were entitled to recover of defendant) as against an admittedly unrealistic demand of $125,000 is so insubstantial as to warrant a fee reduction. Thus, the "strong presumption" that the lodestar amount is the appropriate award is not altered and that is the amount the Court will award.

      **E.**    **Costs.**  Mr. Brewster seeks recovery of costs and expenses totaling $367.35 (*see* Doc. 45, Exhibit 2, Brewster declar., at 10-11), while Mr. Arciniegas seeks recovery of costs and expenses totaling $1,010.30 (*see id.,* Exhibit 1, Arciniegas declar., at 1 & Exhibit A to declar.), for a total of $1,377.65 in costs and expenses (*see* Doc. 45, at 6 & 24). A district court is required to award costs of the action to prevailing FLSA plaintiffs. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, ***and costs of the action***." (emphasis supplied)). However, this Court recognizes that cost recovery is limited by 28 U.S.C. § 1920. *Smith, supra,* at *10, citing *Clark v. Northview Health Services, LLC,* 2013 WL 3930095, *9 (S.D. Ala. Jul. 30, 2013); *accord Mock v. Bell Helicopter Textron, Inc.,* 456 Fed.Appx. 799, 802 (11th Cir. Jan. 27, 2012) (in ADEA case, the Eleventh Circuit made clear that "cost recovery is limited by 28 U.S.C. § 1920."). Section 1920 sets forth the following list of compensable costs:

    (1)    Fees of the clerk and marshal;
    (2)    Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
    (3)    Fees and disbursements for printing and witnesses;
    (4)    Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
    (5)    Docket fees under section 1923 of this title;
    (6)    Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920(1)-(6).

Both Mr. Brewster and Mr. Arciniegas seek as expenses the time expended by paralegals Michele Potter (3.6 hours @ $95.00 per hour) and Brooke Henderson (4.15 hours @ $95.00 per hour) on the instant litigation (*compare* Doc. 45, at 6 & 24 *with id.*, Exhibits 1 & 2, Arciniegas & Brewster declars., Exhibit A to Arciniegas declar. and Exhibit C to Brewster declar.) and they include those requests under the overarching demand for reimbursement of reasonable costs (*see* Doc. 45, at 23-24; *see also id.* at 24 ("Plaintiffs respectfully request that an award of . . . $1,377.65 in costs be entered for Plaintiffs.")).[14] However, plaintiffs nowhere establish under which subsection of § 1920

---

[14]     This Court need not consider the plaintiffs' request other than as explicitly set forth in their motion for fees and costs. Nevertheless, to the extent plaintiffs would seek this Court's reconsideration of this portion of its order, the undersigned need note that it considers all entries for work performed by Brooke Henderson as non-compensable clerical work (that is, the entries on January 22, 2015, for proofreading complaint, preparing materials for filing complaint, and filing complaint—.5—and for preparing complaint for service and serving complaint—.2—constitute clerical work, as does the time spent on February 25, 2015, adding dates to the calendar from the Court's scheduling order (.2), the time spent on May 5, 2015 (1.0) preparing spreadsheets for each plaintiff's clock in and clock out times, and the unexplained data entries on June 24, 2015 (1.5) and June 25, 2015 (.75)), and at least one entry by Potter (on March 27, 2015 for drafting the facts of the amended complaint for review (.7)) as non-compensable clerical work. *Williams v. R.W. Cannon, Inc.,* 657 F.Supp.2d 1302, 1309 (S.D. Fla. 2009) ("While 'secretarial work . . . is not recoverable under an attorney's fee application,' *Orenshteyn v. Citrix Sys., Inc.,* 558 F.Supp.2d 1251, 1259 (S.D. Fla. 2008), work performed by paralegals is recoverable if it is 'work that [i]s traditionally performed by an attorney.' *Alter Fin. Corp. v. Citizens and S. Int'l Bank of New Orleans,* 817 F.2d 349, 350 (5th Cir. 1987)."); *see also id.* at 1310-1311 ("Paralegal fees can be recovered 'only to the extent that the paralegal performs work traditionally done by an attorney,' *Allen v. U.S. Steel Corp.,* 665 F.2d 689, 697 (5th Cir. 1982), which includes 'factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations and drafting correspondence,' *Missouri v. Jenkins,* 491 U.S. 274, 288 n.10, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989), but not 'clerical work, compilation of facts and statistics and other work that can often be accomplished by non-lawyers,' *Johnson v. Georgia Hwy. Exp., Inc.,* 488 F.2d 714, 717 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989)."); *see Western Sur. Co. v. Bradford Elec. Co., Inc.,* 483 F.Supp.2d 1114, 1121 (N.D. Ala. 2007) ("Paralegal expenses are recoverable only to the extent that the paralegal performs work traditionally done by an attorney. Otherwise, paralegal expenses are unrecoverable overhead expenses."). And while most of Michele Potter's entries do not appear to be as clerical in nature (*see* Doc. 45, Exhibit C to Brewster declar.), the requested rate (of $95.00) for Potter is in no manner factually substantiated (with evidence of Potter's experience and special qualifications, etc.). *Compare Johnson v. TMI Management Systems, Inc.,* 2012 WL 4435304, *4 (S.D. Ala. Sept. 26, 2012) (finding $75.00 per hour was reasonable hourly rate for paralegal time where movant did not show that paralegals possessed special (Continued)

paralegal "expenses" are enumerated as compensable costs and this Court has unearthed no case establishing that paralegal expenses are compensable costs under § 1920; therefore, the undersigned determines that paralegal expenses are not compensable costs under § 1920 and will not be awarded herein. *Cf. Scelta v. Delicatessen Support Services, Inc.,* 203 F.Supp.2d 1328, 1339 (M.D. Fla. 2002) ("[F]acsimiles, long distance telephone calls, couriers, express mail, computerized legal research, attorney travel and lodging, postage, search services, office supplies, attorney meals, secretarial services, mediation and expert witness fees . . . are not compensable under § 1920 because these expenses are not enumerated in the statute."). The same is true of Mr. Brewster's requests for costs associated with a lunch and dinner meeting with one of his co-counsel, totaling $20.10, and Mr. Arciniegas' requests for reimbursement of postage (a total of $14.51) and computerized legal research ($14.84). *See id.* (attorney meals, postage and computerized legal research are not compensable as costs under § 1920); *see also Duckworth v. Whisenant,* 97 F.3d 1393, 1399 (11th Cir. 1996) (postage and computerized legal research not compensable under § 1920). However, the filing fee of $400.00 and all remaining copying and scanning costs (a combined total of $191.95) are determined to be compensable under § 1920, *see* 28 U.S.C. § 1920(1) & (3)-(4), the

---

qualification or experience to support an award of a higher hourly rate) *with Cormier, supra,* at *3 ("Unlike the cases relied on by the plaintiffs, no evidence as to the capacity that paralegals Floyes, Allen and Wiggins performed has been presented. . . . 'Absent a showing that a paralegal possesses some extraordinary qualification or expertise,' the lodestar rate of $75/hour is routinely awarded in this district."). Accordingly, because plaintiffs in this case also have failed to establish that Potter possesses special qualifications or experience to support an hourly paralegal rate of $95.00, this Court would (on any reconsideration) "hold to" *Cormier* and *Johnson* and find the reasonable hourly paralegal rate to be $75.00, *see also Goldsby v. Renosol Seating, LLC,* 2013 WL 6535253, *9 (S.D. Ala. Dec. 13, 2013) ($75.00 paralegal rate), and award plaintiffs an additional $217.50 for the time (2.9) Potter reasonably spent on tasks in this case that otherwise would have been performed by an attorney.

defendant making no argument to the contrary (*see* Doc. 48), *see Smith, supra,* at *12 (court reduced plaintiffs' claimed expenses by those amounts identified by the defendant as falling outside the parameters of § 1920).

In light of the foregoing, this Court **AWARDS** plaintiffs compensable costs totaling $591.95--$5.25 to Mr. Brewster and $586.70 to Mr. Arciniegas—under § 1920 in this FLSA case.

## CONCLUSION

For the reasons set forth above, the plaintiffs' motion for an award of reasonable attorneys' fees and costs (Doc. 45) is **GRANTED IN PART.** The Court awards reasonable attorney's fees for Mr. Brewster in the amount of $14,768.00, Mr. Arciniegas' in the amount of $14,410.20, and Ms. Richardson in the amount of $12,173.00. The Court awards costs of Mr. Brewster in the amount of $5.25 and of Mr. Arciniegas in the amount of $586.70. To the extent the plaintiffs seek additional recovery, their motion is **DENIED**.

**DONE** and **ORDERED** this the 27th day of January, 2016.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**